# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE MELENDEZ, | § | |
|     *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-13-3605 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| *Acting Social Security Commissioner*, | § | |
|     *Defendant*. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the court is plaintiff Jose Melendez's ("Melendez") motion for summary judgment. Dkt. 9. Also pending is a cross-motion for summary judgment filed by defendant Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner"). Dkt. 7. After considering the motions, responsive briefing, record evidence, and applicable law, the court finds that Melendez's motion (Dkt. 9) should be **DENIED**, and the Commissioner's motion (Dkt. 7) should be **GRANTED**. The Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

Melendez filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner regarding Melendez's claim for disability insurance benefits under Title II of the Social Security Act (the "Act").

### A. Medical History

Melendez was born on October 21, 1960. Tr. at 38.[1] Melendez started work as a police officer with the Houston Police Department in the 1980s. *Id.* at 46. Around the same time, Melendez began to suffer from Post-Traumatic Stress Disorder ("PTSD") and depression, and

---

[1] "Tr." refers to the certified administrative transcript filed as Docket Entry No. 4 in the record of this appeal on April 4, 2014. Dkt. 4.

thereafter began seeing a psychiatrist for treatment. *Id.* at 46–47. Melendez's psychiatrist prescribed him anti-depressant and anti-anxiety drugs, including Atvian and Klonopin. *Id.* at 47. Melendez also took Vicodin and Hydrocodone for his back pain, and Ambien to sleep. *Id.* at 48. In 2007, after serving in the Houston Police Department for twenty-seven years, Melendez retired. *Id.* at 46. In 2004 and 2009, Melendez had MRIs taken of his spine. *Id.* at 530–32. The 2004 MRIs were normal, but the 2009 MRI found Melendez had degenerative changes in the lower lumbar spine. *Id.* at 530.

**B. Application to the Social Security Administration**

On July 28, 2011, Melendez applied for disability insurance benefits, claiming depression, anxiety, obesity, degenerative disc disease of the lumbar spine, and polysubstance abuse disorder. *Id.* at 125, 283. His alleged onset date is February 4, 2007, and his date last insured is December 31, 2010. *Id.* at 125, 127.

On September 14, 2011, his benefits application was denied. *Id.* at 66. On September 21, 2011, Melendez requested reconsideration. *Id.* at 70. His application was reconsidered and subsequently denied on November 30, 2011. *Id.* at 71. Melendez requested a hearing on November 30, 2011. *Id.* at 74.

**C. Hearing**

Melendez's hearing was conducted on May 17, 2012 in Houston, Texas, and presided over by administrative law judge Susan Soddy (the "ALJ"). *Id.* at 26–61. Melendez testified that he graduated from a private Catholic high school and completed some college. *Id.* at 40. Melendez stated he lived with his wife and their son in a two-story home. *Id.* at 38. He testified that he does not receive food stamps or housing assistance, but receives a pension. *Id.* at 39. Melendez noted he is able to manage his own money. *Id.* at 41.

2

He testified that he worked as a police officer for twenty-seven years, from 1980 to 2007. *Id.* at 46. Between 2000 and 2006, Melendez also worked as a loan officer and real estate agent on the side. *Id.* at 36. Melendez claimed he left his job as a police officer because he was "mixing [his anti-anxiety and anti-depressant prescriptions] with alcohol," which caused him to be "so depressed that [he] wasn't going to work." *Id.* at 47. Melendez explained he "was so sick [he] didn't want to face it" so he retired. *Id.* In 2012, Melendez worked briefly for Continental Airlines picking up trash and cleaning, but was ultimately fired from the position. *Id.* at 41, 44.

Melendez testified that the Ambien, Klonopin, Atvian and "all the other drugs" caused him to not "want to deal with the world." *Id.* at 51. In September 2008, Melendez was admitted to Memorial Hermann Hospital for treatment due to "benzodiazepine dependence" and "bipolar disorder mixed and mild," but was discharged after two days. *Id.* at 51, 491. Melendez testified that after being discharged, he flew to Hawaii. *Id.* at 51–52. In Hawaii, Melendez "drank and smoked marijuana with a buddy." *Id.* at 52. Regarding his physical ailments, Melendez testified that "the drugs and alcohol" caused him some memory problems, from which he is still recovering. *Id.* at 53. He stated that he has to write things down or put them in his iPhone to remember. *Id.*

After reviewing the record and hearing Melendez's testimony, the vocational expert, Herman Litt, testified that Melendez's past employment as a police officer constituted skilled work performed at a medium level of exertion, his work as a real estate agent constituted skilled work performed at a light level of exertion, and his work as a loan officer constituted skilled work performed at a sedentary level of exertion. *Id.* at 58. The ALJ posed a hypothetical question to Mr. Litt whether there were any jobs in the national economy for an individual of Melendez's age, education level, and work experience, who could perform medium work but must be limited to simple, routine tasks which require minimal contact with the public, and could not work at fast-paced assembly

3

production jobs.  *Id*.  Mr. Litt responded in the affirmative, noting the hypothetical individual could

work as a warehouse stocker, a hospital cleaner, or a laundry worker.  *Id*. at 59.

**D. Administrative Law Judge's Decision**

On July 12, 2012, the ALJ determined that Melendez was not disabled and denied his

application for disability benefits.  *Id*. at 8–25.  Initially, the ALJ determined that Melendez had not

engaged in substantial gainful activity and had the following severe impairments: depression,

anxiety, obesity, degenerative disc disease of the lumbar spine, and polysubstance abuse disorder.

*Id*. at 14.  However, at step three of the disability analysis, the ALJ determined that, through the date

last insured, Melendez  "did not have an impairment or combination of impairments that met or

medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1."  *Id*.

The ALJ found that Melendez's degenerative disc disease of the lumbar spine did not meet

or equal the listing for the impairment, as defined in § 1.04, because the disease has not

compromised a nerve root or the spinal cord.  *Id.;*  20 C.F.R. Part 404, subpt. P, app. 1.  The ALJ

also concluded that Melendez's obesity did not meet or equal the listing because it has not caused

Melendez to have trouble ambulating effectively.  Tr. at 16.  The ALJ further noted that Melendez

does not have multiple impairments involving the cardiovascular or pulmonary systems which have

exacerbated his obesity.  *Id*.

The ALJ explained that because Melendez's depression, which is evaluated under § 12.04,

was accompanied by appetite and sleep disturbances, decreased energy, feelings of guilt or

worthlessness, and difficulty concentrating, it met the A criteria of  § 12.04 of 20 C.F.R. Part 404,

4

Subpart P, Appendix 1.[2]  *Id.* at 14.  However, his anxiety disorder, which is evaluated under § 12.06, did not meet the A criteria of § 12.06.[3]  *Id.* at 15.  She added that both § 12.04 and § 12.06 can require that the individual's impairment meet the B criteria.  *Id.*  To meet the B criteria of the sections, the impairment must have caused at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; or marked deficiencies of concentration, persistence, or pace.  *Id.*  Alternatively, to meet the B criteria there must be a showing of one "marked" limitation and repeated, extended episodes of decompensation.  *Id.*; 20 C.F.R. Part 404, subpt. P, app. 1 (defines "extended duration" as "three episodes within one year, or an average of once every four months, each lasting for at least two weeks").

In evaluating the B criteria, the ALJ first noted that Melendez's anxiety and depression only mildly restricted his daily activities, as he was able to drive, cook simple meals, perform light housework, take his son to school, and attend appointments and meetings as needed.  Tr. at 15.  For this reason, she concluded that during the time at issue, Melendez was "totally independent in all activities of daily living."  *Id.*  Second, the ALJ found Melendez had "moderate difficulties" in social

---

[2] To meet listing 12.04, a claimant must have a clinically diagnosed mood disorder "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04. "Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." *Id.* In addition, "the required level of severity for these disorders is met when the requirements in both [subsections] A and B are satisfied, or when the requirements in [subsection] C are satisfied." *Id.* Subsection A(1) lists nine symptoms; the claimant must have experienced at least four of the symptoms continuously or intermittently to satisfy the criteria of subsection A. *See id.* Subsection B lists four symptomatic limitations: (1) marked restriction of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration. *See id.* The claimant must provide evidence that the mood disorder has resulted in at least two symptomatic limitations to satisfy the criteria of subsection B. *See id.* Finally, subsection C requires a medically-documented history of a chronic affective disorder of at least two years' duration causing more than a minimal limitation of ability to perform basic work activities and one of the following: (1) repeated, extended episodes of decompensation; (2) a residual disease process that leaves the individual on the borderline of experiencing an episode of decompensation; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement. *Id.*

[3] To meet listing 12.06, a claimant must have a clinically diagnosed anxiety disorder. Additionally, "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." *See id.* § 12.06. Subsection A can be satisfied if the claimant has "medically documented findings" sufficient to meet any one of the five symptoms listed under subsection A. *Id.*

functioning. *Id*. During the period at issue, Melendez socialized with others. *Id*. The ALJ noted

how Melendez also worked as a real estate officer and loan officer in 2010, and for Continental

Airlines in 2012. *Id*. Third, the ALJ concluded that Melendez had "moderate difficulties" with

concentration, persistence or pace. *Id*. While Melendez reported having some trouble with memory,

during the period at issue Melendez was able to travel alone without confusion or difficulty, manage

finances, understand television plots, and follow instructions. *Id*. Fourth, there was no evidence that

Melendez experienced extended episodes of decompensation. *Id.*; *see also* 20 C.F.R., Part 404,

subpt. P, app. 1. Thus, the ALJ found that "the record d[id] not substantiate that the claimant has

marked limitations" sufficient to meet the B criteria, and therefore Melendez's impairments did not

meet or equal the criteria of the listings in §§ 12.04 and 12.06.[4] Tr. at 15.

      The ALJ next found that Melendez had the residual functional capacity ("RFC") to perform

a limited range of medium work. *Id*. at 16. The ALJ noted that while Melendez reported he was

unable to work due to PTSD, anxiety, and depression, Melendez had also stated "he was able to carry

on his regular activities of daily living without difficulty." *Id*. at 17. The ALJ stated Melendez did

receive psychiatric treatment during the relevant period, and noted that the treatment notes indicate

his symptoms "waxed and waned." *Id*. The ALJ highlighted how the treatment notes also showed

evidence of alcohol and drug abuse during the time at issue. *Id*. The ALJ noted: "The record does

not substantiate any treatment for psychologically based symptoms or substance abuse after

September 2008 until May 2011, five months after his date last insured." *Id*. The ALJ concluded

---

[4] The ALJ noted that Melendez also failed to meet the C criteria of listing 12.04. Tr. at 15–16. She found that while Melendez had a history of mood disorders, he experienced no episodes of decompensation not related to drug or alcohol abuse. *Id*. at 15. He lived with his wife and son and is independent in meeting his personal care needs. *Id*. at 15–16. She concluded that "[t]hese factors indicate that the claimant does not require a highly supportive living arrangement with no episodes of decompensation." *Id*. at 16.

6

that "the longitudinal medical records, the lack of treatment and the claimant's activities of daily living support the residual functional capacity." *Id*. at 19.

The ALJ found that Melendez was unable to perform his past relevant work. *Id*. at 19. However, the ALJ determined that Melendez could perform other jobs that existed in significant numbers in the national economy. *Id*. The ALJ thus concluded that Melendez was not disabled within the meaning of the Social Security Act from the alleged onset date, February 4, 2007, through the date last insured, December 31, 2010. *Id.* at 20.

Upon learning of the ALJ's denial, Melendez requested a review of the decision. *Id*. at 7. On October 9, 2013, the Appeals Council denied Melendez's request. *Id*. at 1. Consequently, the ALJ's denial became the final decision of the Commissioner. *Id*. On December 10, 2013, Melendez filed an original complaint before this court to appeal the Commissioner's decision. Dkt. 1.

## II. LEGAL STANDARD

The court's review of a final decision denying disability benefits is limited to determining whether: (1) the ALJ applied proper legal standards in evaluating the record; and (2) substantial evidence in the record supports the decision. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

In order to obtain disability benefits, a claimant bears the burden of proving he is disabled within the meaning of the Act. *See Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The existence of such a disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A).

7

To determine whether a claimant is capable of performing any "substantial gainful activity," the regulations provide that disability claims should be evaluated according to the following process:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa v. Sullivan*, 896 F.2d 1019, 1022 (5th Cir. 1990)); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof on the first four of the above steps, while the Commissioner bears it on the fifth. *See Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). The analysis stops at any point in the process upon a finding that the claimant is or is not disabled. *See Greenspan*, 38 F.3d at 236.

The widely accepted definition of substantial evidence is evidence "that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *see also Greenspan*, 38 F.3d at 236 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Commissioner has the responsibility of deciding any conflict in the evidence. *See id*. If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive and the court must affirm. 42 U.S.C. § 405(g); *see also Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Only if no credible evidentiary choices among the medical findings exist to support the Commissioner's decision should the court overturn it. *See Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). In applying this standard, the court should examine the entire record to determine whether such evidence is present. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th

Cir. 1999).  The court may not substitute its judgment for that of the Secretary, reweigh the evidence, or try the issues *de novo*.  *Id*.  In other words, the court should defer to the decision of the Commissioner as much as possible without making its review meaningless.  *Id*.

### III. ANALYSIS

In his motion for summary judgment, Melendez first argues that the statement in the ALJ's report that "[t]he record does not substantiate any treatment for psychologically based symptoms or substance abuse after September 2008 until May 2011, five months after his date last insured" demonstrates that the ALJ failed to consider the evidence in the record for this time period, and therefore there is insufficient evidence to support the ALJ's judgment.  Tr. at 17; Dkt. 9.  Melendez asserts the evidence in the record from September 2008 through December 2010 demonstrates that Melendez's depression and anxiety met or equaled the listings set forth in § 12.04 Affective Disorder and § 12.06 Anxiety Disorder.  Dkt. 9.  In his second point of error, Melendez asserts that the ALJ's failure to consider the treatment notes from that period caused error in her assessment of Melendez's RFC, because this evidence was also "relevant to the issue as to whether [Melendez]" "could have maintained a job during the time-frame" and showed that Melendez's "severe mental limitations in combination with his painful degenerative disc disease and obesity precluded [his] ability to maintain and sustain full-time competitive work."  *Id*.  Third, Melendez contends that the ALJ improperly applied the rules and regulations regarding substance abuse.  *Id*.  By contrast, the Commissioner argues the ALJ properly evaluated Melendez's impairments and asserts the ALJ's decision was supported by substantial evidence.  Dkt. 7.

**A. Severity of Melendez's Impairments**

With regard to Melendez's first point of error, even if the ALJ failed to evaluate the medical records from September 2008 through December 2010 at step three of the analysis, any error would

have been harmless.  *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (holding that even if the ALJ erred by discounting the credibility of the claimant, any error that may have resulted was harmless because "[i]t is inconceivable that the ALJ would have reached a different conclusion on this record"); *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (noting that even if parts of the vocational expert's testimony were inconsistent with the record, any error was harmless because there was substantial evidence in the record to support the ALJ's ruling that the claimant could work).  Additionally, there was substantial evidence to support the ALJ's finding that Melendez's impairments did not meet or equal a listing.

The ALJ thoroughly evaluated Melendez's medical history and medical documentary evidence. Tr. at 16.  The ALJ recognized that Melendez had received "psychiatric treatment during the relevant period at issue" and cited evidence from the doctor's treatments notes.  *Id*. at 16–18.  For example, the opinion cites facts from the treatment notes that Melendez "described symptoms of depression/anxiety and mood disorder," "abused prescription medication," and even "sought employment during the above period."  *Id*. at 17.  The opinion also mentions that Melendez "told his psychiatrist, you made me a drug addict."  *Id*.

In the paragraph following these details, the ALJ states: "The record does not substantiate any treatment for psychologically based symptoms or substance abused after September 2008 until May 2011."  *Id*.  There are, however, treatment notes from September 2008 through the date last insured, December 31, 2010.  Melendez argues that the treatment notes from this later period provide evidence that his impairments meet a listing.  Dkt. 9.  The court has reviewed the notes from the later period Melendez alleges the ALJ ignored (September 2008 - December 2010) as well as the treatment notes from the earlier period (February 2007 - September 2008), and finds that the notes

from both time periods are substantially similar.[5]  The treatment notes from the later period do not include any evidence showing an increased level of restrictions in daily living, difficulties in maintaining social functioning, deficiencies in concentration, persistence or pace, or episodes of decompensation, such as would support a finding that his impairments met the B criteria.

Further, these treatment notes were not a significant factor in the ALJ's finding that Melendez's impairments did not meet the B criteria.  The finding that Melendez only had mild restrictions in activities of daily living was based on Melendez's own testimony about how he could drive, cook, attend appointments, and the like.  Tr. at 15.  The ALJ relied on Melendez's testimony from the hearing, as well as the fact he had worked in jobs involving social interaction, for her conclusion that he had moderate difficulties with social functioning.  *Id*.  Again, the finding that Melendez had moderate difficulties with concentration, persistence, or pace was based on Melendez's testimony.  *Id*.  The ALJ did refer to the treatment notes for her determination that the record was void of evidence of episodes of decompensation of extended duration.  *Id*.  The ALJ's opinion emphasized that while there was some evidence of decompensation, the period of decompensation was too brief to constitute an "extended duration," as Melendez was only in the hospital for two days.  *Id*.  ("While the claimant was admitted to the hospital in September 2008 for psychiatric treatment it was only for two days and the primary reason for the hospitalization was benzodiazepine dependence.").  The treatment notes from the later period, September 2008 to

---

[5] For example, Melendez cites a treatment note from April 17, 2009 in which Melendez reported "a lot of anxiety" [because he was running out of Ativan]; however, a treatment note from May 7, 2008, which the ALJ reviewed, indicates Melendez "still ha[d] a lot of anxiety."  Tr. 361,  369.  Further, a number of notes from 2010 indicated Melendez generally reported suffering from stress and anxiety.  *Id*. at 360 (note dated January 15, 2010, Melendez states he is anxious about looking for a job); *id*. at 359 (note dated January 28, 2010, Melendez complained of increased depression and anxiety); *id*. (note dated February 8, 2010, Melendez reported increased stress).  Treatment notes from 2007 and 2008, which the ALJ reviewed, also indicate Melendez suffered from stress and anxiety during that period.  *Id*. at 360 (note dated July 7, 2008, Melendez reported he was dealing with a lot of stress, as well as depression and anxiety); *id*. at 368 (note dated May 7, 2008, Melendez said he still had a lot of anxiety); *id*. at 372 (note dated June 5, 2007, Melendez still feeling anxious).

December 2010, do not provide evidence of periods of decompensation for an extended duration. *Id*. at 356–65. Accordingly, the evidence from the later period is not sufficient for Melendez's impairments to meet the B criteria, and "it is inconceivable that the ALJ would have reached a different conclusion on this record." *Frank*, 326 F.3d at 622. The ALJ's finding at step three that Melendez's impairments did not meet or equal a listing was supported by substantial evidence.

## B. Melendez's Residual Functional Capacity

In his second and related point of error, Melendez argues the ALJ erred at step four in finding he had an RFC to perform medium work because the treatment notes from September 2008 to December 2010 provide evidence to the contrary. The court finds there is substantial evidence to support the ALJ's finding, and furthermore, because the substance of the treatment notes for the later period is materially the same as that of the notes from the earlier period, a failure to consider the later notes would have been harmless error. *See id.*

The burden of proof to provide medical evidence showing disability rests with the claimant. *Rodriguez v. Bowen*, 857 F.2d 275 (5th Cir. 1988). The ALJ's opinion states:

> The evidence in aggregate must be complete and detailed enough to allow a determination about whether an individual is disabled, including determination of the residual functional capacity to do work related activities. Clearly, the claimant is responsible for providing evidence that he is disabled. If the claimant fails to give the medical and other evidence that is needed, a decision will be made based on the information available in the record.

Tr. at 18. The ALJ found that Melendez "failed to point to objective clinical evidence that supports his alleged claims."[6] *Id*. The ALJ recognized that "Melendez was treated for mood disorders during the period at issue," but found "there [wa]s no evidence that his mood disorder

---

[6] The medical evidence that Melendez submitted for the relevant period included: psychiatric treatment records (354–86), reports from a sleep study in which Melendez participated in 2004 (340–53, 644–76), hospital records from his treatment in 2008 for benzodiazepine dependency and mood disorder (490–501), and an x-ray of his lumbar spine taken in 2009 (530–32).

and/or post traumatic stress disorder caused debilitating symptoms and functional limitations." *Id*. The ALJ emphasized that Melendez was able to work for twenty years while suffering from PTSD, which she concluded "indicat[ed] while the impairment was severe it was not debilitating." *Id*. The ALJ stated that "[w]ith no specific evidence of deterioration, it is reasonable to conclude that his impairments are controllable with medication." *Id*.

The treatment notes from September 2008 to December 2010 do not provide the nature of evidence the ALJ found to be lacking, and there was no testimony from Melendez's psychiatrist to substantiate his treatment of Melendez. Further, there is substantial evidence to support the ALJ's finding that Melendez had the RFC to perform medium work. *See, e.g., Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (holding that the ALJ's determination that the claimant could work was supported by substantial evidence, including the fact that she had worked for many years while suffering from the ailments she now asserts are disabling, and that no physician who examined her pronounced her disabled); *see also Hernandez v. Astrue*, 278 F. App'x 333, 339–40 (5th Cir. 2008) (if inconsistencies exist between the alleged impairments and the evidence as a whole, the ALJ may discount a claimant's complaints).

**C. Melendez's Substance Abuse**

Third, Melendez argues that the ALJ improperly applied the rules and regulations regarding substance abuse. Alcohol or drug addiction can preclude a finding of disability: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) (discussing how Congress passed the Contract With American Advancement Act in 1996 to preclude Social Security benefits for a

13

claimant where drug addiction or alcoholism was a contributing factor material to a determination of disability); *Doherty v. Barnhart*, 285 F. Supp. 2d 883, 895 (S.D. Tex. 2003) (noting how a finding that alcoholism was a contributing factor material to the disability determination prevents an award of social security benefits). 20 C.F.R. § 404.1535 explains how alcohol or drug addiction should be considered in evaluating one's disability claim.  20 C.F.R. § 404.1535.  However, this provision and the analysis it outlines do not come into play until after an individual is found to be disabled.  *Id*.  The ALJ never considered Melendez's alcohol and drug addiction for the period at issue because she determined Melendez was not disabled, and the analysis was therefore unnecessary.  *Id*.

Finding that the ALJ's decision is supported by substantial evidence and sufficiently articulated, the court must affirm the Commissioner's denial of benefits in this case.

## IV. CONCLUSION

Melendez's motion for summary judgment (Dkt. 9) is **DENIED**, and the Commissioner's cross-motion for summary judgment (Dkt. 7) is **GRANTED**.  The Commissioner's decision is **AFFIRMED**.

Signed at Houston, Texas on August 20, 2014.

Gray H. Miller
United States District Judge

14